UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re JEWELED OBJECTS LLC,                          :
                                                    :
                            Debtor.                 :
                                                    :    12 Civ. 8559 (KBF)
------------------------------------------------------------X
JOEL BOYARSKY, et al.,                              :    OPINION & ORDER
                                                    :
                            Plaintiffs,             :
                                                    :
            -v-                                     :
                                                    :
ROBERT HOBERMAN, et al.,                            :
                                                    :
                            Defendants.             :
------------------------------------------------------------X
JOEL BOYARSKY, et al.,                              :
                                                    :
                            Appellants,             :
                                                    :
            -v-                                     :
                                                    :
BECKMAN, LIEBERMAN & BARANDES, LLP,                 :
                                                    :
                            Appellee.               :
------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: SEP 1 3 2013
```

KATHERINE B. FORREST, District Judge:

On March 2, 2010, plaintiffs Joel Boyarsky ("Boyarsky"), Accountants Proprietary Financial Servicenet, Inc. ("APFS"), The Pamela B. Blattner Living Trust (the "Blattner Trust"), LBV Retirement Plan ("LBV"), Arnold and Carol Wolowitz (together, "Wolowitz"), and The Carol and Arnold Wolowitz Foundation, Inc. (the "Wolowitz Foundation") (collectively, the "Boyarsky Parties"), individually and derivatively on behalf of Jeweled Objects LLC ("Jeweled Objects" and together with the Boyarsky Parties, "Plaintiffs"), filed an action in the Supreme Court of New York, County of New York, against defendants Robert Hoberman

1

("Hoberman"), Mitchel May ("May"), HGL Management LLC ("HGL"), R. Esmerian, Inc. ("REI"), Fine Jewels Associates ("Fine Jewels"), Ralph Esmerian ("Esmerian"), Precious Stones Company ("Precious Stones"), Benjamin Zucker ("Zucker"), and Beckman, Lieberman & Barandes, LLP ("Beckman") (collectively, "Defendants"), alleging fraud, conversion, breach of fiduciary duty, and other tortious conduct. (See Appellant's Br.[1] at 6.)

On April 7, 2010, Jeweled Objects filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code. (See id.) On that same day, Jeweled Objects, HGL, and Hoberman removed the underlying action to this Court, pursuant to 28 U.S.C. §§ 1334 and 1452, after which point the underlying action was referred by this Court to Bankruptcy Court. (See id.)

On January 4, 2011, Beckman filed a Motion to Dismiss. (See id.) On August 22, 2012, the Bankruptcy Court granted Beckman's Motion to Dismiss, with leave for Plaintiffs to file a Motion to Amend the Complaint within 30 days. (See id. at 7-8; Bankr. Ct. Mem.[2] at 2.) Plaintiffs did not file an Amended Complaint, and on October 2, 2012, the Bankruptcy Court issued an Order and Judgment dismissing Beckman from the action with prejudice. (See Appellant's Br. at 8.)

On November 26, 2011, Plaintiffs appealed the Bankruptcy Court's dismissal of Beckman to this Court. On March 21, 2013, Plaintiffs' appeal was fully briefed,

---

[1] Citations to "Appellant's Br." refer to Appellants' Brief for Reversal of Order and Judgment Dismissing Adversary Proceeding with Prejudice as to Beckman, Lieberman & Barandes, LLP Entered on October 2, 2012, filed on January 10, 2013.
[2] Citations to "Bankr. Ct. Mem." refer to Memorandum of Decision on Beckman, Lieberman & Barandes LLP's Motion to Dismiss, filed on August 22, 2012.

and on July 6, 2013, the matter was reassigned from the Honorable Thomas P. Griesa to the undersigned. On July 8, 2013, oral argument was held.

After carefully considering the parties' arguments, the Court hereby AFFIRMS the Bankruptcy Court's Order and Judgment dismissing with prejudice defendant Beckman.

## FACTUAL BACKGROUND

According to allegations contained in Plaintiffs' Complaint, in 2006, defendants Hoberman, May, and Esmerian obtained funds from Merrill Lynch ("Merrill") that enabled Esmerian, through his corporate vehicle REI, to purchase Fred Leighton Jewelers ("Leighton"). (Compl.[3] ¶¶ 55, 56.) Allegedly needing to service the Merrill debt, Hoberman and May conspired with Esmerian and Beckman to defraud Plaintiffs. (Id. ¶¶ 58, 61.)

I. The Terms of the Deal

Plaintiffs allege that Hoberman approached Boyarsky – who was acting on behalf of the Boyarsky Parties – and induced the Boyarsky Parties to invest in and become members of Jeweled Objects f/k/a Rest Cash Flow IV, LLC. (Id. ¶ 67.) Pursuant to the terms of the deal proposed by Hoberman, Jeweled Objects would purchase a large collection of jewels and antiquities ("the 38 Objects") from Esmerian/REI. (Id. ¶ 61.) Jeweled Objects and Fine Jewels Associates ("Fine Jewels"), which was owned by Esmerian and REI, would then enter into an agreement that gave Fine Jewels the right to repurchase the 38 Objects within one

---

[3] Citations to "Compl." refer to the Complaint, filed in Supreme Court of the State of New York, County of New York on March 2, 2010.

3

year of the initial agreement, for a premium price. (Id. ¶¶ 61-63, 96.) If Fine Jewels did not repurchase the 38 Objects within the year, the Boyarsky Parties allegedly were told that Jeweled Objects nonetheless "would have more than ample security to recoup its investment[,] plus a significant profit." (Id. ¶ 63.)

## II. The Initial Transaction

On March 27, 2006, following the Boyarsky Parties' investments, Jeweled Objects entered into a Jewelry Purchase Agreement ("JPA") with REI to purchase the 38 Objects for $8.95 million. (Id. ¶ 71.) Beckman allegedly represented both Jeweled Objects and REI in negotiating the JPA. (Id. ¶ 74.)

To induce Plaintiffs to enter into the transaction, REI allegedly "represented and warranted, among other things, that the 38 Objects were 'owned by [REI] free and clear of any liens, encumbrances or restrictions . . .'" and additionally, that the fair market value of the 38 Objects was more than $28 million.[4] (Id. ¶¶ 75, 83.) According to Plaintiffs, in May of 2006, after Jeweled Objects obtained $5.25 million from Plaintiffs, the JPA was "actually executed." (Id. ¶ 72.)

The transaction was facilitated by a Deferred Jewelry Purchase Agreement ("Deferred Sale Agreement"), which was similarly dated March 27, 2006 and entered into in May of 2006. (Id. ¶ 90.) Pursuant to the terms of the Deferred Sale

---

[4] Plaintiffs contend that this representation was in part based upon a May 26, 2006 appraisal by defendants Zucker and Precious Stones of 20 of the 38 Objects ("the Zucker Appraisal"). (Compl. ¶ 80.) According to the Zucker Appraisal, the 20 appraised objects alone had a fair market value of $23,950,000. (Id.) The Court notes, however, that Plaintiffs allege that the Zucker Appraisal occurred on May 26, 2006, but that Plaintiffs state that they entered into the JPA on March 27, 2006. (Id. ¶¶ 71, 80, 81.)

4

Agreement, Jeweled Objects agreed to re-sell the 38 Objects to Fine Jewels within one year for the initial $8.95 million purchase price, plus an additional payment of $1,879,500. (Id. ¶¶ 90, 91.)

### III. Alleged Misrepresentations Made by Defendants

Despite the alleged representations made to Plaintiffs by Hoberman, and despite the language contained in the JPA that the 38 Objects were free of liens or other encumbrances, Plaintiffs allege that a number of the jewels and antiquities that comprised the 38 Objects had, in fact, already been pledged to Merrill as collateral for REI's purchase of Leighton. (Id. ¶ 65.) Plaintiffs contend that Hoberman, May, Esmerian, and Beckman knew this at the time they represented that the 38 Objects were unencumbered and without any liens, and that such representation was made knowingly and with the intent to defraud Plaintiffs. (Id. ¶¶ 65, 66, 68, 76, 78.)

Similarly, Plaintiffs allege that the value of the 38 Objects was far below that which Plaintiffs had been led to believe they were worth. (Id. ¶ 89.) Plaintiffs contend that Zucker, Precious Stones, Esmerian, REI, Hoberman, and May were aware of such fact and "facilitated and participated in producing to Plaintiffs [the] unrealistically inflated appraisal with the purpose of inducing and deceiving Plaintiffs to rely thereon." (Id. ¶¶ 86, 88, 89.)

### IV. First Amended Deferred Sale Agreement

On March 27, 2007, Defendants Hoberman, May, Esmerian, and Beckman allegedly amended the Deferred Sale Agreement to extend Fine Jewels' deadline to repurchase the 38 Objects to March 27, 2008. (Id. ¶ 101.) In exchange, "Fine

Jewels (by and through one of its two partners, REI) purported to deliver to Jeweled Objects one additional item of collateral (in addition to the 38 Objects), an emerald and diamond necklace (the 'Necklace')," which was allegedly valued at not less than $1 million. (Id. ¶ 102.) According to Plaintiffs, Fine Jewels also agreed to pay Jeweled Objects an additional $1,879,500 as consideration for the extension of the Deferred Sale Agreement and "[u]pon such payment, Fine Jewels was permitted . . . to reclaim the Necklace from Jeweled Objects." (Id. ¶ 103.)

Plaintiff alleges that in conjunction with this extension of the Deferred Sale Agreement, defendants Esmerian, REI, Fine Jewels, Hoberman, and May arranged for a reaffirmation by Zucker and Precious Stones of the Zucker Appraisal. (Id. ¶ 104.) Plaintiffs contend that on April 24, 2007, "[w]ith the knowledge and encouragement of each of the other Defendants, Hoberman then deceptively advised Boyarsky (and through him the other Plaintiffs) . . . that Jeweled Objects had obtained Zucker's and Precious Stones' reaffirmed 'fair market value' appraisal and that Jeweled Objects had elected supposedly to 'renew the option' for Fine Jewels to 'buy back the jewelry for one more year.'" (Id. ¶ 106.)

V.  Second Amended Deferred Sale Agreement

According to Plaintiffs' Complaint, Defendants did not repurchase the 38 Objects upon the expiration of the First Amended Deferred Sale Agreement, and on March 27, 2008, Jeweled Objects and Fine Jewels entered into a second extension of the Deferred Sale Agreement. (Id. ¶ 110.) Pursuant to the Second Amended Deferred Sale Agreement, "Fine Jewels agreed to 'deem' Jeweled Objects' initial purchase price of the 38 Objects of $8,950,000 to be increased to $10,740,000, which

6

Fine Jewels agreed to repay in full by December 31, 2009." (Id. ¶ 111.) Additionally, Fine Jewels allegedly promised to pay interest of $2,657,200, and REI and Esmerian agreed to personally serve as guarantors and to provide as additional collateral three works of art, an antique filing cabinet, and a vase, with a total alleged value of $5,950,000. (Id. ¶¶ 111-12.)

According to Plaintiffs, this additional collateral had previously been pledged to an entity called Knight Jewels LLC ("Knight"), which Plaintiffs allege was wholly owned by May. (Id. ¶ 116.) Plaintiffs claim that May purportedly was to have Knight sell the additional collateral back to REI and Esmerian so that REI and Esmerian could then pledge it to Jeweled Objects, pursuant to the terms of the Second Amended Deferred Sale Agreement. (Id.) Plaintiffs allege that Beckman agreed to act as "Escrow Agent" for the UCC documentation presumably required by the additional collateral. (Id. ¶ 117.) Plaintiffs also allege that Esmerian, REI, Fine Jewels, May, Hoberman, and Beckman conspired to prevent Jeweled Objects from ever taking possession of the additional collateral. (Id. ¶ 122.)

VI. Allegations in Plaintiffs' Complaint

In their Complaint, Plaintiffs assert eight causes of action: (1) fraud and fraudulent inducement against Hoberman and May; (2) conspiracy to commit fraud and fraudulent inducement against Esmerian, REI, Fine Jewels, Zucker, Precious Stones, and Beckman; (3) breach of fiduciary duty against HGL and May; (4) conspiracy to commit breach of fiduciary duty against Hoberman, Esmerian, REI, Fine Jewels, Zucker, Precious Stones, and Beckman; (5) that HGL and May should be removed as the managers of Jeweled Objects; (6) conversion by Jeweled Objects

7

against Esmerian, REI, Hoberman, and May; (7) conversion by Jeweled Objects against Hoberman, May, Esmerian, REI, and Beckman; and (8) fraud against Zucker and Precious Stones. (See id. ¶¶ 124-170.)

With respect to defendant Beckman's Motion to Dismiss, the relevant causes of action are Count Two, alleging conspiracy to commit fraud and fraudulent inducement, and Count Four, alleging conspiracy to commit breach of fiduciary duty.[5]

## STANDARD OF REVIEW

The District Court acts as the first level appellate review for orders from bankruptcy court. See Fed. R. Bankr. P. 8013. On appeal, the court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Id. District courts review the legal determinations of a bankruptcy court de novo. See, e.g., In re Quebecor World (USA) Inc., No. 11 Civ. 7530, 2012 WL 4477247, at *4 (S.D.N.Y. Sept. 28, 2012).

Complaints asserting civil causes of action in bankruptcy court must meet the pleading requirements per such claims brought in a district court. See In re DJK Residential LLC, 416 B.R. 100, 106 (Bankr. S.D.N.Y. 2009) (explaining that "[i]n determining whether a party has met their burden in connection with a proof of claim, bankruptcy courts have looked to the pleading requirements set forth in the Federal Rules of Civil Procedure") (citations omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, "the plaintiff must provide the grounds upon which [its]

---

[5] Plaintiffs indicated at the July 8, 2013 Oral Argument that they no longer seek relief for conversion, which is Count Seven of their Complaint and the only other cause of action against Beckman. (See Tr. at 4.)

8

claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). In other words, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Starr v. Sony BMG Music Entm't, 592 F.3d 314, 321 (2d Cir.2010) (quoting Twombly, 550 U.S. at 570)); see also Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (same).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. In applying that standard, the court must accept as true all well-pleaded factual allegations, but it does not credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." Id. If a court can infer no more than "the mere possibility of misconduct" from the factual averments, dismissal is appropriate. Starr, 592 F.3d at 321 (quoting Iqbal, 556 U.S. at 679).

Federal Rule of Civil Procedure 9(b) requires that in all allegations of fraud, the circumstances allegedly constituting the fraud be stated with particularity. See Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1127 (2d Cir.1994); see also Banco Indus. de Venezuela, C.A. v. CDW Direct, L.L.C., 888 F. Supp. 2d 508, 514 (S.D.N.Y. 2012) (recognizing that claims of aiding and abetting a breach of fiduciary duty that "sound in fraud" must meet Rule 9(b)). A pleading that asserts a claim of fraud must have sufficient particularity: (1) to provide a defendant with fair notice of the

9

claims against it; (2) to protect a defendant from harm to its reputation or goodwill by unfounded allegations of fraud; and (3) to reduce the number of strike suits. See DiVittorio v. Eqidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987).

"To pass muster [under Rule 9(b)] in this Circuit, a complaint 'must allege with some specificity the acts constituting fraud' . . .; conclusory allegations that defendant's conduct was fraudulent or deceptive are not enough." Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd., 85 F. Supp. 2d 282, 293 (S.D.N.Y. 2000) (quoting Lobatto v. Berney, No. 98 Civ. 1984, 1999 WL 672994, at *9 (S.D.N.Y. Aug. 26, 1999) (quoting Decker v. Massey-Ferguson, Ltd., 681 F.2d 111, 114 (2d Cir. 1982)). To make out a claim pursuant to Rule 9(b), a plaintiff must allege: "(1) the specific statement or omission; (2) the aspect of the statement or omission that makes it false or misleading; (3) when the statement was made; (4) where the statement was made; and (5) which defendant was responsible for the statement or omission." Lobatto, 1999 WL 672994, at *9.

When a plaintiff alleges that multiple defendants have engaged in a fraud, "a plaintiff must plead with particularity by setting forth separately the acts or omissions complained of by each defendant." Odyssey Re (London) Ltd., 85 F. Supp. 2d at 293 (citations omitted).

## LEGAL PRINCIPLES

As discussed above, two causes of action are at issue in Beckman's Motion to Dismiss: (1) conspiracy to commit fraud and fraudulent inducement; and (2) conspiracy to breach fiduciary duty. The Bankruptcy Court construed Plaintiffs' claims as aiding and abetting claims, rather than conspiracy claims. While

Plaintiffs may not amend their Complaint by asserting new claims or theories for the first time in their opposition to a Motion to Dismiss, see K.D. v. White Plains Sch. Dist., 921 F. Supp. 2d 197, 209, n.8 (S.D.N.Y. 2013), as they seem to have done here, the distinction between aiding and abetting and conspiracy is inapposite for these purposes. See In re Terrorist Attacks on Sept. 11, 2001, 349 F. Supp. 2d 765, 797-98 (S.D.N.Y. 2005) (explaining that under New York law, conspiracy "requires an agreement to commit a tortious act," while aiding and abetting "requires that the defendant have given substantial assistance or encouragement to the primary wrongdoer," but under either cause of action, "the defendant must know the wrongful nature of the primary actor's conduct") (internal quotation marks and citations omitted). Accordingly, the Court proceeds as though Plaintiffs' causes of action sound in aiding and abetting, rather than conspiracy.

I. Aiding and Abetting Fraud and Fraudulent Inducement

In order to make out a claim for aiding and abetting fraud, a plaintiff must show: "(1) the existence of an underlying fraud; (2) knowledge of this fraud on the part of the aider and abettor; and (3) substantial assistance by the aider and abettor in achievement of the fraud." Anwar v. Fairfield Greenwich Ltd., 728 F. Supp. 2d 372, 442 (S.D.N.Y. 2010) (internal quotation marks and citation omitted).

"The 'knowledge' element of an aiding and abetting fraud claim is not identical to the scienter required for the underlying fraud." King County, Wash. v. IKB Deutsche Industriebank AG, 916 F. Supp. 2d 442, 448 (S.D.N.Y. 2013) (internal quotation marks and citation omitted). Rather, a plaintiff must allege facts that create "a reasonable inference of actual knowledge." Id. (internal quotation marks

11

and citations omitted); see also JP Morgan Chase Bank v. Winnick, 406 F. Supp. 2d 247, 252-53, n.4 (S.D.N.Y. 2005) (explaining that "it is clear that actual knowledge, and not recklessness, is the controlling legal standard").

To create such an inference, a plaintiff must allege either actual knowledge or constructive avoidance; an allegation of constructive knowledge – i.e., that the defendant "should have known" – is not sufficient. Banco Indus. de Venezuela, C.A., 888 F. Sup. 2d at 514 (citations omitted). In other words, "[a] plaintiff may 'not merely rely on conclusory or sparse allegations that the aider or abettor knew or should have known about the primary breach of fiduciary duty.'" Id. (quoting Meisel v. Grunberg, 651 F. Supp. 2d 98, 115 (S.D.N.Y. 2009) (quoting Global Minerals & Metal Corp. v. Holme, 824 N.Y.S.2d 210, 217, 35 A.D. 3d 93 (2006))).

As for the requirement of "substantial assistance," a plaintiff must claim that a defendant engaged in affirmative assistance – "the mere inaction of an alleged aider and abettor constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff." King County, Wash., 916 F. Supp. 2d at 448-49 (internal quotation marks and citations omitted); see also Abu Dhabi Commercial Bank v. Morgan Stanley & Co., 888 F. Supp. 2d 431, 445-46 (S.D.N.Y. 2012).

II. Aiding and Abetting a Breach of Fiduciary Duty

To state a claim for aiding and abetting a breach of fiduciary duty, a plaintiff must show: "(1) breach of fiduciary obligations to another of which the aider and abettor had actual knowledge; (2) the defendant knowingly induced or participated

12

in the breach; and (3) plaintiff suffered actual damages as a result of the breach." Anwar, 728 F. Supp. 2d at 442 (internal quotation marks and citation omitted).

Similar to aiding and abetting a fraud, the knowledge requirement for aiding and abetting a breach of a fiduciary duty "requires allegations of facts that give rise to a 'strong inference' of actual knowledge." Banco Indus. de Venezuela, C.A., 888 F. Supp. 2d at 514 (quoting Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt., LLC, 479 F. Supp. 2d 349, 367 (S.D.N.Y. 2007)); see also Geo Grp., Inc. v. Community First Servs., Inc., No. 11 Civ. 1711, 2012 WL 1077846, at *10 (E.D.N.Y. March 30, 2012) (quoting Lerner v. Fleet Bank, N.A., 459 F.3d 273, 294 (2d Cir. 2006)). "Substantial assistance occurs when a defendant affirmatively assists, helps conceal[,] or fails to act when required to do so, thereby enabling the breach to occur." Lerner, 459 F.3d at 295. As in aiding and abetting fraud, a failure to act only rises to the level of substantial assistance in an aiding and abetting a breach of fiduciary duty claim "if the defendant owes a fiduciary duty directly to the plaintiff." Id.

## ANALYSIS

In this Complaint, Plaintiffs allege that Beckman engaged in the following conduct:

- Conspired with Esmerian, Hoberman, and May to construct the allegedly fraudulent transaction, knowing that a number of the objects comprising the 38 Objects had already been pledged to Merrill, with the intent to defraud Plaintiffs and to obtain "fees." (Compl. ¶¶ 9, 61, 65-66, 68, 70, 76, 78, 97, 98.)

13

- Worked with Hoberman, May, and Esmerian to orchestrate "a series of extensions" to prevent Jeweled Objects from selling the 38 Objects. (Id. ¶¶ 14, 100.)
- Conspired with Hoberman, May, and Esmerian "to make it appear that Esmerian would offer nearly $6 million in additional collateral . . . in consideration of his extended time to repurchase the 38 Objects," and then failed to transfer the additional collateral to Plaintiffs. (Id. ¶ 15.)
- Represented both Jeweled Objects and REI in negotiating the JPA and the Deferred Sale Agreement. (Id. ¶¶ 74, 95.)
- Worked with Hoberman, May, and Esmerian to design the Deferred Sale Agreement so that "a substantial portion of [the] profit [went] to Hoberman and May[,] even though Hoberman and May had both only nominally invested in Jeweled Objects. (Id. ¶ 96.)
- Amended the Deferred Sale Agreement and agreed to act as "Escrow Agent" for the ICC documentation presumably required by the additional collateral associated with the Second Amended Deferred Sale Agreement. (Id. ¶¶ 101, 117.)
- Conspired with Esmerian, REI, Fine Jewels, May, and Hoberman to prevent Jeweled Objects from taking possession of the promised additional collateral. (Id. ¶ 122.)

These allegations reveal that Plaintiffs' core assertion is that Beckman worked with and on behalf of its clients (i.e., the other Defendants) to construct, negotiate, and implement a fraudulent transaction, with the intent to defraud Plaintiffs.

14

I. Actual Knowledge Requirement

As discussed above, in order to state an aiding and abetting claim – for both fraud (including fraudulent inducement) and breach of fiduciary duty – a plaintiff must allege that the defendant had actual knowledge of the underlying misconduct. The Complaint must contain allegations that the defendant either actually knew about or consciously avoided the wrongdoing, such that "it can almost be said that the defendant actually knew" about the misconduct because "he or she suspected a fact and realized its probability, but refrained from confirming it in order later to be able to deny knowledge." Fraternity Fund Ltd., 479 F. Supp. 2d at 368.

A review of Plaintiffs' Complaint reveals that while it contains cursory allegations that Beckman knew about the alleged fraudulent conduct and breach of fiduciary duty, the allegations with respect to knowledge are insufficient under Rule 9(b).

First, the assertions are conclusory and at times, circular. For example, while Plaintiffs allege that Beckman knew that REI had pledged various objects that comprised the 38 Objects to Merrill in order to obtain financing to acquire Leighton, and that accordingly, Beckman knew that some of the 38 Objects did, in fact, have liens on them at the time of the transaction with Plaintiffs, Plaintiffs provide no allegation explaining how or why Plaintiffs would have known that REI had pledged the various objects to Merrill.[6] (Id. ¶¶ 65, 66.) As the Bankruptcy

---

[6] While Plaintiffs' counsel claimed at oral argument that Beckman "put together" the deal with Merrill and that as a result, it must have known that some of the 38 Objects had liens, this allegation is not apparent on the face of the Complaint. (See Tr. at 10-11.)

Court notes, an allegation that an attorney structured what turned out to be a fraudulent transaction "does not, without more, given rise to a reasonable inference that such professionals were aware" of the wrongdoing. See Bankr. Ct. Mem. at 18 (noting that Plaintiffs did not allege, for example, "that Beckman gave an opinion with respect to REI's transfer of or title in the Jewels or [that Beckman] was asked or in fact performed due diligence on REI's title in the Jewels during which it was discovered that REI had pledged six of the Jewels to Merrill Lynch . . .").

Second, concerning the allegedly misleading statements included in the JPA, Plaintiffs' Complaint again does not allege that Beckman had any knowledge of the misconduct. Indeed, based upon the allegations in Plaintiffs' Complaint, it may very well be the case that Beckman's clients provided Beckman with the substance to be contained in the documents and that Beckman merely effectuated the terms as dictated. Even were it the case that Beckman took a more active role in determining the substance of the provisions contained in the transaction documents – which Plaintiffs aver to only in the most general sense – Plaintiffs' Complaint fails to allege that Beckman had any reason to know, let alone had actual knowledge, of the falsity of the term about liens or encumbrances on the 38 Objects.[7]

Third, Plaintiffs fail to allege with any specificity what Beckman would have had to gain from engaging in the alleged fraudulent behavior, further illustrating the deficiency of Plaintiffs' Complaint concerning the knowledge requirement. From the face of Plaintiffs' Complaint, Plaintiffs assert that Beckman essentially provided legal work in exchange for legal fees. Plaintiffs do not claim that Beckman

---

[7] See supra at n.6.

16

received any pay-off for participating in the misconduct, nor do Plaintiffs allege that Beckman played any role beyond providing legal services. As such, it is unclear what incentive Beckman would have had to engage in the misconduct Plaintiffs allege, undermining the notion that Beckman had actual knowledge of its clients' alleged misconduct.

II. Failure to Allege Substantial Assistance

As discussed above, under New York law, a defendant provides substantial assistance where: "(1) a defendant 'affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed; and (2) the actions of the aider/abettor proximately cause the harm on which the primary liability is predicated." Rosner v. Bank of China, No. 06 Civ. 13562, 2008 WL 5416380, at *5 (S.D.N.Y. Dec. 18, 2008) (internal quotation marks and citations omitted) (discussing the standard for aiding and abetting a fraud); see also Fraternity Fund Ltd., 479 F. Supp. 2d at 360 (explaining that "when a plaintiff adequately pleads substantial assistance in connection with a fraud claim, he or she fulfills also the participation element of the breach of fiduciary duty claim").

In this case, the Bankruptcy Court reasoned that because Plaintiffs failed to sufficiently allege "actual knowledge" on the part of Beckman, Plaintiffs could not meet the "substantial assistance" requirement of aiding and abetting claims. (See Bankr. Ct. Mem. at 20) (explaining that "one cannot affirmatively, help conceal or fail to stop the commission of a tort that one knows nothing about").

After reviewing the Complaint, it appears that Plaintiffs do, in fact, allege that Beckman provided substantial assistance, in the form of legal services.

17

However, since Plaintiffs fail to allege actual knowledge on the part of Beckman, the aiding and abetting claims fall short. Put simply, providing legal assistance to a client – with no knowledge of the client's underlying misconduct – is far from an unlawful activity, and yet, that is essentially what Plaintiffs have alleged in their Complaint as against Beckman.

## CONCLUSION

After considering the parties' arguments made on appeal and after carefully examining the allegations contained in Plaintiff's Complaint against defendant Beckman, the Court hereby finds that Plaintiffs have failed to state a claim as against defendant Beckman. Accordingly, the Bankruptcy Court's October 2, 2012 Order and Judgment is hereby AFFIRMED and this case is REMANDED to the Bankruptcy Court for further proceedings.

SO ORDERED.

Dated: New York, New York
September 13, 2013

_____
KATHERINE B. FORREST
United States District Judge